IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRANDEN COLVIN, Sr.,

      **Plaintiff,**

vs.                                  Case No. 17–cv–00257–DRH

**CHESTER MENTAL HEALTH,**
**K. STRAIGHT,**
**BRUCE,**
**TRACY MOT,**
**JAMES,**
**WILL MILLER, and**
**NANCY HENDERSON,**

      **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

**HERNDON, District Judge:**

Plaintiff Branden Colvin, Sr., a detainee at Rock Island County Jail in Rock Island, Illinois, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. According to his Complaint (Doc. 1) and Supplement (Doc. 9),[1] Plaintiff suffered numerous violations of his constitutional rights at Chester Mental Health Center ("CMHC") in 2016.[2] (Doc. 1, pp. 1-5). He names CMHC and six of its employees in connection with claims under the First, Eighth, and Fifteenth Amendments.

---

[1] Plaintiff filed a Supplement (Doc. 9) to his Complaint on April 5, 2017. Although the Court typically does not accept piecemeal amendments to a complaint, it will make an exception in this case because Plaintiff filed the Supplement before the Court screened the Complaint under 28 U.S.C. § 1915A.

[2] The Complaint suggests that Plaintiff was held at CMHC while his fitness to stand trial was evaluated.

(Doc. 1). Plaintiff seeks criminal charges and monetary damages against the defendants. (Doc. 1, p. 6).

The Complaint is now subject to preliminary review under 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint does not survive screening because it is factually and legally frivolous. Accordingly, it shall be dismissed.

## Complaint

According to the Complaint, Plaintiff arrived at CMHC on June 15, 2016. (Doc. 1-1, p. 1). In the months that followed, Tracy Mot (therapist), Bruce (an "STA"), James (an "STA"), Will Miller ("STA supervisor"), K. Straight (nurse), and Nancy Henderson (unit director) allegedly violated his rights under the First, Eighth, and Fifteenth Amendments. (Doc. 1, pp. 1-5; Doc. 1-1, pp. 1-12). The allegations offered in support of Plaintiff's claims against each of these individuals are summarized herein.

## Tracy Mot

Plaintiff's therapist, Tracy Mot, allegedly failed to place a 5-page "lecture/essay" that Plaintiff wrote into his file for the judge and doctor to review. (Doc. 1-1, pp. 1-4). The lecture/essay addressed "the occult-esoteric-metaphysics-theosophy." *Id*. Plaintiff describes it as "very difficult subject matter for the average Westernized mind." (Doc. 1-1, p. 3). When Plaintiff asked Mot to explain why she did not place the writing sample in his file, Mot indicated that she thought it was only for her review. *Id*. Plaintiff characterizes this response as "manipulation," which is a "form of witchcraft." *Id*.

Mot "seem[ed] to think" that Plaintiff was delusional. (Doc. 1-1, p. 1). After telling Plaintiff that he made a perfect score on his fitness test, she insinuated that he still needs "medicine." *Id*. Plaintiff offers a single example in support of this assertion. (Doc. 1-1, pp. 1-3). On one occasion, Mot told Plaintiff that he "think[s] highly of [him]self." (Doc. 1-1, p. 2). According to Plaintiff, this was

Mot's way of suggesting that he suffers from grandiose thinking. *Id*. In response to her comment, Plaintiff agreed that he has "high self esteem." *Id*. Plaintiff went on to say that he "understood" if Mot could not comprehend his writing because of the difficult subject matter. (Doc. 1-1, p. 3). He then stated, "Little Mrs. Tracy . . . is a sufferer from average mind syndrome [sic]." *Id*.

When Plaintiff asked Mot to place another 5-page writing sample into his file, a "sit in" therapist intervened and demanded money for photocopies. (Doc. 1-1, p. 2). This bewildered Plaintiff, who was never before required to pay for copies. *Id*. Mot later confirmed that she placed the writing sample in Plaintiff's file. *Id*. Plaintiff did not believe her. *Id*. He alleges that Mot lost his trust after the first incident of manipulation. (Doc. 1-1, p. 3). Mot was replaced by "Shirley"[3] on August 2, 2016. (Doc. 1-1, pp. 10-11).

Plaintiff claims that Mot's conduct violates his freedom of speech, press, and religion under the First Amendment. (Doc. 1-1, p. 4). He also brings a discrimination claim against her under the Fifteenth Amendment. (Doc. 1, p. 5).

### Bruce, James, Miller, and Henderson

Plaintiff goes on to complain about separate constitutional deprivations that resulted from the alleged misconduct of Bruce (an "STA"), James (an "STA"), Will Miller ("STA" supervisor), and Nancy Henderson (unit director). (Doc. 1-1, pp. 4-

---

[3] Neither the "sit in" therapist nor "Shirley" is named as a defendant in the case caption. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

12). According to the Complaint, these individuals "tyrantly abuse[d] authority by being vindictive[,] manipulative[,] [and] making false reports" against him. (Doc. 1-1, pp. 4-5). As a result, Plaintiff's behavior level "dropped." (Doc. 1-1, p. 5). He was placed in seclusion on two separate occasions. (Doc. 1-1, pp. 5-6).

The first time, Plaintiff was placed in seclusion by Bruce for "about an hour" as punishment for talking in line while returning from lunch. (Doc. 1-1, p. 5). He does not deny talking. *Id.* Plaintiff instead states that "every day people talk in line going to and from the dinning (sic) room." *Id.*

On July 15, 2016, Plaintiff was again pulled from the lunch line and placed in seclusion for approximately ninety minutes. *Id.* Bruce, Miller, and another unknown individual[4] searched Plaintiff's room. (Doc. 1-1, p. 12). In the process, they discovered a sharp object stored in a sock. (Doc. 1-1, pp. 5-8). The sharp object was actually a toothbrush. (Doc. 1-1, pp. 7-9). Plaintiff maintains that he stored it in a sock to keep it clean and avoid "catch[ing] germs." *Id.* He describes the officers who failed to realize this as "stuck on stupid" and "dumber than dumber." (Doc. 1-1, p. 9). Plaintiff's toothbrush was confiscated as punishment, and he now has to request permission to use it. *Id.* He refuses to do so. *Id.* Plaintiff attributes this punishment to "another false report!" *Id.*

Plaintiff refers to Bruce as a bully, a "ring leader," and a manipulator, which he again characterizes as witchcraft. (Doc. 1-1, p. 7). He provides one additional example of Bruce's misconduct. *Id.* Bruce called Plaintiff "retarded"

---

[4] The unknown individual is not named as a defendant in the case caption, and all potential claims against this individual are therefore considered dismissed without prejudice. *Myles*, 416 F.3d at 551-52.

for "trying to get the biggest pencil" when "most are very little." (Doc. 1-1, p. 5). Plaintiff told Bruce that the name-calling was not very nice. *Id*. In response, Bruce said, "I didn't call you retarded[.] I said what you did was." *Id*. Plaintiff told him to "stop the manipulation" before retreating to his room to meditate. *Id*.

Plaintiff has filed several complaints against Bruce, describing his conduct as inhumane. (Doc. 1-1, p. 5). Miller responded to at least one of these complaints by telling Plaintiff, "You don't run nothing." *Id*. Miller also told Plaintiff that his complaints were shredded. (Doc. 1-1, p. 8). However, James and Henderson ignored his complaints. *Id*. Plaintiff now sues Bruce for violating his rights under the First Amendment, and he sues all of these defendants for violations of his Eighth and Fifteenth Amendment rights.

**Nurse Straight**

The exhibits to the Complaint describe a third instance in which Plaintiff was placed in seclusion on August 5, 2016. (Doc. 1-1, pp. 14-16). Nurse Straight completed paperwork indicating that Plaintiff was "agitated yelling, cursing, [and] threatening sexually inappropriate [conduct with] female nurses." (Doc. 1-1, p. 14). Consistent with "his preference," Plaintiff was placed in seclusion. *Id*. He then began "kicking and hitting" the door. *Id*. He was deemed an "imminent risk of harm to self [and] others" and restrained. (Doc. 1-1, p. 16). The only mention of this incident in the Complaint is the following: "8-5-16, 1510 time, placed in seclusion: lies; 8-5-16, 1725 time, administered emergency medication: lies; 8-5-

16, 1747 time, placed in restraint: lies." (Doc. 1, p. 5; Doc. 1-1). He then refers to the Eighth and Fifteenth Amendments. (Doc. 1, p. 5).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following counts:

**Count 1** - First Amendment claim against Tracy Mot for interfering with Plaintiff's freedom of speech, press, and religion by "stealing" his lecture/essay and failing to place a copy of it in his file for the judge's and doctor's review in 2016.

**Count 2** - First and/or Eighth Amendment claims against Bruce and Miller for antagonizing Plaintiff and placing him in seclusion for "hours" at "various times."

**Count 3** - Eighth Amendment claim against Nurse Straight for placing Plaintiff in seclusion on August 5, 2016.

**Count 4** - Eighth Amendment claims against James, Miller, and Henderson for failing to respond to Plaintiff's complaints about Bruce's conduct by intervening and stopping it.

**Count 5** - Fifteenth Amendment "discrimination" claim against all of the defendants for their mistreatment of Plaintiff at CMHC.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. These designations do not constitute an opinion regarding the merits of each claim.

District courts are required to screen prisoner complaints and dismiss a "complaint, or any portion of the complaint . . . [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

Plaintiff's Complaint is subject to dismissal under this standard. It is both factually and legally frivolous.

1. **Factual Frivolity**

Allegations in a complaint are "factually frivolous" when they are "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." *Felton v. City of Chicago*, 827 F.3d 632, 635 (7th Cir. 2016) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)). In contrast, allegations that are "unlikely," improbable," or "strange" do not satisfy this standard. *Id*. Many, if not most, factual allegations in the Complaint are irrational, baseless, and wholly incredible.

Plaintiff focuses on the alleged misconduct of two defendants, *i.e.*, Mot and Bruce. He repeatedly asserts that both individuals engaged in witchcraft, based on their "manipulation" of him. (Doc. 1-1, pp. 3, 7). Setting aside the fact that witchcraft gives rise to no cognizable legal claim, even a cursory review of the factual allegations calls Plaintiff's characterization of the defendants' conduct into question.

Plaintiff's claim against Mot arose from her failure to place a writing sample into his file because she thought he intended it for her review only. After he clarified his intentions, Mot allegedly placed the writing sample into his file and confirmed this fact for Plaintiff. However, Plaintiff claims that Mot could no longer be trusted given her earlier manipulation of him (*i.e.*, witchcraft). He offers no other reason for claiming that she stole his writing sample. Plaintiff's

allegations of manipulation and witchcraft are purely fantastical. His allegations that this defendant stole his writing sample are purely speculative. The factual allegations offered in support of Count 1 are baseless.

Plaintiff's claim against Bruce and/or Miller in Count 2 arose from two instances in which one or both defendants punished Plaintiff with 60-90 minutes in seclusion. However, Plaintiff admits that he was talking in line (the reason for being punished the first time) and hiding a toothbrush in his sock (the reason for being punished the second time). Despite these admissions, he characterizes the defendants' conduct as examples of "false reports" and unwarranted manipulation of him (*i.e.*, witchcraft). He does not complain about any denial of due process or unconstitutional conditions while he was in seclusion. His factual allegations against these defendants in connection with Count 2 are also baseless.

Plaintiff's claim in Count 4 against James, Miller, and Henderson is ancillary to his claim against Bruce and/or Miller in Count 2. He alleges that these defendants took no steps to intervene and stop Bruce. Instead, they ignored his complaints. However, these defendants would have no obligation to intervene and stop conduct that does not violate Plaintiff's constitutional rights.

Plaintiff's allegations against Nurse Straight in connection with Count 3 are threadbare and factually frivolous. Plaintiff includes a list of phrases that refer to his placement in seclusion on August 5, 2016. However, Plaintiff does not challenge his placement there, dispute the reason for it, or claim any denial of due process beyond referring to each incident as "lies." The records that Plaintiff filed

along with the Complaint also indicate that seclusion was consistent with "his preference."  Whether threadbare or factually frivolous, the Court finds no basis for Count 3 against this defendant.

As for Count 5, Plaintiff offers no factual allegations in support of his claim that the defendants discriminated against him.  He simply peppers his Complaint with references to discrimination.  His discrimination claim is unsupported by the allegations in the complaint.  He does not describe being singled out in any way for any reason.

2. **Legal Frivolity**

In addition, Plaintiff's claims against the defendants are all legally frivolous. A claim is considered legally frivolous when it is "based on an indisputably meritless legal theory." *Felton*, 827 F.3d at 635 (citing *Neitzke*, 490 U.S. at 327-28).  All of Plaintiff's legal claims fit into this category.

He sues CMHC under no legal theory at all.  Section 1983 authorizes suits against "persons," and CMHC is not a "person" within the meaning of the Civil Rights Act.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff cannot bring a § 1983 suit against this defendant.

He sues Mot in Count 1 and Bruce in Count 2 for violating his freedom of speech, the press, and religion under the First Amendment.  Plaintiff offers no reason in the Complaint for pursuing legal claims under the latter two theories. The only allegation offered in support of the first theory is that Mot stole his

writing sample when she failed to place it in his file. Plaintiff fails to develop this claim in any respect.

Prisoners have a First Amendment right to free speech, *see Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Martin v. Brewer*, 830 F.2d 76, 77 (7th Cir. 1987), and restrictions on that right will be upheld only if they are "reasonably related to legitimate penological interests," *see Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000). Prison officials also may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

Plaintiff does not suggest that Mot failed to include his writing sample in his prison file in order to interfere with his right to free speech or to retaliate against him. The allegations make it clear that she mistakenly believed he intended to give her the writing sample.

Plaintiff's allegations that Bruce antagonized him do not give rise to any claim, let alone one under the First Amendment. Plaintiff asserts that Bruce called him "retarded" for insisting on using the biggest pencil. Simple verbal harassment of a prisoner typically does not support a claim under the Eighth Amendment either. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("[S]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment."). Although this is not always the case, such as instances

when verbal harassment is paired with other conduct, Plaintiff describes nothing more than a single instance of verbal harassment. *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). Although his comment is offensive and inappropriate, Bruce's statement gives rise to no conceivable claim under the First or Eighth Amendments. Count 2 is utterly lacking in merit.

The only other reason for bringing an Eighth Amendment claim against the defendants is because of Plaintiff's placement in seclusion. However, Plaintiff focuses on two instances when he was placed in seclusion, for 60-90 minutes each time. He complains of no objectionable conditions during either placement period. Counts 2 and 4 clearly lack merit.

As for his claim in Count 3 against Nurse Straight, Plaintiff offers nothing more than a short string of descriptive words and phrases describing a third time he was placed in seclusion. He repeatedly mentions "lies" without offering a reason for doing so. He then lists the Eighth Amendment. The Eighth Amendment claim against Nurse Straight in Count 3 is also meritless.

Finally, Plaintiff's bald assertion that all of the defendants subjected him to discrimination is utterly unsupported by the law or facts. He does not suggest that he was singled out or treated differently for any reason or in any respect. Count 5, like all of the other claims, is indisputably meritless.

On a closing note, Plaintiff seeks the imposition of criminal charges against the defendants, among other things. Plaintiff cannot use § 1983 as a vehicle to compel a criminal prosecution of the defendants. *See Town of Castle Rock, Colo.*

*v. Gonzales,* 545 U.S. 748, 768 (2005); *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.,* 548 F.3d 595, 597 (7th Cir.2008).

Plaintiff's claims lack an arguable basis either in law or in fact. *See Neitzke*, 490 U.S. at 325. The allegations in the Complaint are fantastical and irrational. *See Atkins v. City of Chicago*, 631 F.3d 823, 831-32 (7th Cir. 2011). The claims are based on indisputably meritless legal theories. *Neitzke*, 490 U.S. at 327-28. The Complaint, and this action, shall therefore be dismissed as factually and legally frivolous.

## **Pending Motion**

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED**. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). However, a district court may exercise its discretion and recruit counsel for an indigent litigant. 28 U.S.C. § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). When a *pro se* litigant requests the assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If he has done so, the Court must also examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether

the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id.*

Plaintiff has made no attempts to find counsel on his own. (Doc. 3, p. 1). He claims that he is unable to do so because he is incarcerated. *Id.* The Court finds no excuse for Plaintiff's failure to contact potential attorneys by phone or mail, and he has complained of no impediments to doing so beyond the fact of his incarceration. His motion is subject to denial on this ground alone. Moreover, the Court is unable to fully assess Plaintiff's ability to litigate this matter on his own because he omitted responses to questions regarding any other educational, physical, mental, or emotional impediments he faces to litigation. Under the circumstances, Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED**.

## Disposition

**IT IS HEREBY ORDERED** that the Complaint (Doc. 1) and this action are **DISMISSED** with prejudice for being frivolous. This includes **COUNTS 1, 2, 3, 4,** and **5**, which are **DISMISSED** with prejudice against the defendants as being factually and legally frivolous.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the

filing fee of $350.00 remains due and payable. See 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(A)(4). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. See FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 25th day of April, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.04.25 15:05:43 -05'00'

**U.S. District Judge**